Decided October 20, 1906.

**1.—Loss of Baggage—Special or Personal Value—Measure of Damage.**

In a suit for the value of hand-painted chinaware shipped as baggage and damaged in transportation, it appearing from the evidence that said chinaware had no market value, and that it could not be replaced or repaired, the measure of damage is the actual loss in money sustained by the owner by reason of his being deprived of the value of the same, and not any fanciful price, because of sentiment or association. The loss of the property to the owner, and not its reasonable value, is the proper measure of damage.

**2.—Baggage—Notice of Contents—Question of Fact.**

A box containing chinaware was marked "glass" and checked as personal baggage; whether or not appellant's agent saw the word "glass" on the box, and whether or not this word and the character of the box were sufficient to put an ordinarily prudent person upon notice of the character of the contents and that the box was not baggage proper were questions of fact for the jury, and a peremptory instruction for the defendant was properly refused. If the defendant accepted the box charged with notice that it was not baggage, it would be liable.

**3.—Final Carrier—Presumption Against—Gulf, C. & S. F. Ry. v. Edloff, 89 Texas, 458, Distinguished.**

A box containing chinaware was checked as personal baggage from a station in Kentucky to Ft. Worth, Texas; it was to be transported over three lines of railroad; appellant was the second or intermediate road; the box was in good condition when delivered to the initial carrier, and when received by the final carrier was in "general bad order," judging from external appearances. Held, that the presumption that the damage occurred on the line of the final carrier would not obtain. The case of Ry. v. Edloff, 89 Texas, 458, is not analogous; in that case the carrier had the opportunity to inspect the goods and ascertain the extent of the damage, and neglected to do so; in this case the final carrier could not inspect and determine the extent to which the china was damaged when received by it.

Appeal from the County Court of Dallas County. Tried below before Hon. Hiram F. Liveley.

*W. T. Henry* and *Leslie Waggener,* for appellant.—Where the evidence shows that the articles damaged have no market value and that they can not be replaced, reproduced or repaired, the measure of damages is the actual loss in money sustained by the owner by reason of his being deprived of the value of said articles, and not any fanciful price that he might for special reasons place upon them. Houston & T. C. Ry. Co. v. Ney, 58 S. W. Rep., 43; International & G. N. Ry. Co. v.

Nicholson, 61 Texas, 550; Houston E. & W. T. Ry. Co. v. Seale, 67 S. W. Rep., 438; Sinclair v. Stanley, 64 Texas, 75; Missouri Pac. Ry. Co. v. Colquitt, 9 S. W. Rep., 603.

When articles, not properly baggage, are tendered to a carrier to be shipped as baggage, and are accepted by said carrier as baggage, without any knowledge on its part of the true character of said articles, or of such facts as would put an ordinarily prudent person upon notice of their true character, it is not liable for any damage thereto during transit. Missouri, K. & T. Ry. Co. v. Meek, 75 S. W. Rep., 319; Galveston, H. & S. A. Ry. Co. v. Fales, 77 S. W. Rep., 235; Hutchinson on Carriers (2d ed.), sec. 685, note No. 1; Gulf, C. & S. F. Ry. Co. v. Edloff, 89 Texas, 458; Houston & T. C. Ry. Co. v. Scott, 13 Texas Ct. Rep., 1007.

*Cook & Orr,* for appellees.—Where property, having no market value, is damaged or destroyed but is of value to the owner, he may prove that value. Brain v. McGregor, 64 S. W. Rep., 78.

When articles in boxes, which are nailed, are delivered to the agent of a railroad company and accepted by him as baggage under circumstances (viz. having the word "Glass" in capital letters six inches high thereon) such as should put a reasonably prudent man upon inquiry, and such agent fails to make inquiry as to the contents of said box, are destroyed or damaged in transit, the carrier is liable to the shipper. Texas Pac. R. R. Co. v. Capps, 2 Texas App. Civ. Cases, sec. 34; Fort Worth & Rio Grande R. R. Co. v. Rosenthal, 29 S. W. Rep., 196; Hutchinson on Carriers, sec. 685; Sloman v. The Great Western R. R. Co., 67 N. Y., 208; Stoneman v. Erie R. R. Co., 52 N. Y., 429; Central Trust Co. v. Wabash, St. L. & P. R. R. Co., 39 Fed. Rep., 417; Jacobs v. Tutt, 33 Fed. Rep., 412.

TALBOT, ASSOCIATE JUSTICE.—Appellees G. W. Green and wife sued the Louisville & Nashville Railway Company, the Texas & Pacific Railway Company and appellant to recover damages alleged to have been sustained on account of the destruction of a lot of hand-painted chinaware shipped over the roads of said companies in a box as personal baggage, from Louisville, Kentucky, to Fort Worth, Texas. It appears that Mrs. Green purchased from the Louisville & Nashville Railway Company, at Louisville, Kentucky, a ticket entitling her to passage over said railroads from that place to Fort Worth, Texas, and tendered to the first named company at Louisville the box of chinaware and a trunk to be checked and carried by said companies as baggage from Louisville to Fort Worth. The box and trunk were weighed by the agent of the Louisville & Nashville Railway Company at Louisville and found to exceed the weight of baggage allowed to be carried on one passenger ticket, for which excess Mrs. Green was required to pay $3.20. The box and trunk were then accepted and checked through to Fort Worth. Upon the box the word "glass" was written in letters six inches long, and when delivered to the railway company at Louisville the hand-painted china therein was in good condition, but when it reached Fort Worth it was broken and worthless. · No questions were asked by the baggage master at Louisville relative to the contents of

the box and he did not tell Mrs. Green that baggage was limited to wearing apparel and she did not inform him as to the nature of the contents of the box. Appellees sought to recover as the value of the chinaware $200, but upon a trial in the County Court a verdict and judgment were rendered in their favor against appellant alone for the sum of $75, and appellant has appealed.

Upon the trial appellees offered in evidence from the deposition of Mrs. Green the following question and answer: "If you say it had no market value by which you could determine its actual worth in dollars and cents, but was of special or personal value to you, please state in what manner, and of what personal value you now place upon said chinaware? How and in what way do you say this chinaware was of a peculiar or personal value to you, if you say it was? A. I would estimate that the box of china was of the value of two hundred dollars. . . . Because it was given to me by my friends, and part of the same was an heirloom in my family; each article had some tender memory connected with it, and each brought back the recollection of some friend of the days of my youth, or some relative past and gone." Appellant objected to this question and answer; (1) because immaterial and irrelevant; (2) because the peculiar or personal value to plaintiff of said hand-painted chinaware by reason of it having been given to her by her friends, of part of it having been an heirloom in the family, of each article having had some tender memory connected with it, and of each article bringing back the recollection of some friend of the days of her youth, or some relative past and gone, was not the true measure of damage, and reflected no light on the true measure of damages, which was the actual loss, in money, suffered by plaintiffs by reason of the destruction of said hand-painted chinaware, and (3) because said testimony showed that the estimate of the witness was not based upon the actual loss in money suffered by plaintiffs by reason of the destruction of said china, but upon memories, sentiments and associations connected with said hand-painted chinaware. The court, upon said objection being made, excluded the following portion of said question and answer: Q. "How, and in what way, do you say this chinaware was of a peculiar or personal value to you, if you say it was?" A. "Because it was given to me by my friends and part of same was an heirloom in my family; each article had some tender memory connected with it, and each brought back the recollection of some friend of the days of my youth, or some relative past and gone," and permitted the balance to go to the jury. Error is assigned to this action of the court and the proposition made that, where the evidence shows that the articles damaged have no market value and that they can not be replaced, reproduced or repaired, the measure of damages is the actual loss in money sustained by the owner by reason of his being deprived of the value of said articles, and not any fanciful price that he might for special reasons place upon them. We have no reason to differ from this statement of the law. It is the rule as announced by the decisions of this State, and applicable here. The evidence is sufficient to show that the hand-painted chinaware destroyed had no market value and could not be reproduced or replaced. That being true the measure of appellees' damages is the actual loss in money sustained

by being deprived of the articles, or their actual value to them. (Houston & T. C. Ry. Co. v. Ney, 58 S. W. Rep., 43; International & G. N. Ry. Co. v. Nicholson, 61 Texas, 550.)

But the question is, has this rule been violated in the present instance and to such an extent as requires the reversal of the case. We think not. It is doubtless true that the value of the chinaware to Mrs. Green and her husband could not be legally shown by an estimate of its value by her based alone upon sentiment and associations; but an examination of the record discloses other reasons given by her. She testified that she used the chinaware for ornamental purposes about her house and residence and that it was of value to her for that purpose. The charge of the court was not as liberal to appellees with respect to the measure of damages as warranted by the law. The jury were instructed in effect that if they found for appellees the measure of their damages would be the reasonable value of the property lost, whereas the rule is, as has been seen, the value of said property *to them*. We think, especially in view of the size of the verdict, that no substantial injury was done appellant by the proceedings complained of in this assignment and it is overruled.

Appellant's third assignment of error complains of the court's action in refusing to give its special requested instruction directing the jury to return a verdict in its favor. The main propositions contended for under this assignment are: (1) That the evidence shows the chinaware was tendered to the initial carrier to be shipped as baggage and accepted as such without any knowledge on its part, or by appellant, of the true character thereof, or of such facts as would put an ordinarily prudent person upon notice of the true character thereof, and hence no liability existed for any damage thereto during transit; (2) That where baggage is delivered in good condition to the initial carrier, is transported over several lines of railway and delivered by the final carrier in a damaged condition, the presumption of law in the absence of evidence showing on which line of railway the damage occurred, is that the damage occurred on the line of the final carrier, and in order to relieve itself of liability by reason of this presumption it devolves upon the final carrier to show not only that the baggage was damaged when received by it from its connecting carrier, but also the extent of said damage, and that the final carrier, the Texas & Pacific Railway Company, in this case, failed by the proof to meet this requirement of the law. These propositions embrace correct principles of law, but we do not agree to the contention that the evidence was of such a character when applied to them as entitled appellant to a peremptory charge instructing the jury to return a verdict in its favor. The chinaware was shipped in a box with the word "glass" in large letters written upon it. The agent of appellant at Memphis, Tennessee, testified: "I handled the two pieces of baggage referred to. I received said baggage from the Patterson Transfer Company at Memphis, Tennessee. . . . I do not remember whether this box had written or printed upon it the word 'glass.' . . . If the box had had the word 'glass' written or printed upon it in capital letters six inches long it is probable that I would have seen it. . . . I judge about ten percent of all the baggage handled by me is contained in boxes and I handle baggage in boxes

about every day in the year. . . . I can not remember whether or not this particular box had the word 'glass' printed on it. . . . It was in good condition and there was nothing more about it to attract my attention to it than to any other baggage." Whether appellant's agent did in fact see the word "glass" written on the box and whether the character of the box and said word written thereon were sufficient to put an ordinarily prudent person upon notice of the true character of the contents thereof were issues of fact raised by the evidence for the determination of the jury, upon which they were correctly instructed. If the facts and circumstances attending the shipment were such as charged appellant with notice that the box did not contain baggage proper but merchandise it ought to be held liable for injury to the property while in its possession.

The material testimony bearing upon appellant's second proposition is found in the statements of the witnesses Mrs. Green and Tom Roberts. Mrs. Green testified that when the chinaware was delivered to the initial carrier it was in good condition and when received by her from the Texas & Pacific Railway Company at Fort Worth it was "broken all to pieces." Roberts testified in substance, that he was train baggage master of the Texas & Pacific Railway Company, running between Texarkana and Fort Worth; that when he received the box of chinaware from appellant at Texarkana it was in "general bad order" and was in the same condition when he delivered it to the station baggage master at Fort Worth. That he did not know on what line the damage occurred, other than he knew it did not occur on the line of the Texas & Pacific Railway Company, as it was in bad order when he received it. That he judged from the outside appearance of the box, as he did not unpack it and examine its contents. That he could not state how many of the pieces of chinaware were broken at the time he received it and meant to testify that the box from the outside appearance was in bad condition. That he never saw inside of the box and could not state positively that none of the china was broken while in his charge, yet he knew that he handled it carefully. It is contended, in effect, that this and other testimony in the record shows that the shipment in question was in good condition when delivered to the initial carrier and in a damaged condition when delivered by the final carrier, but fails to show on which line of railway the damage occurred and hence a prima facie case established against the final carrier for the full amount of the damage; that if any damage is shown to have occurred on appellant's line of road the extent thereof does not appear and the prima facie case against the Texas & Pacific Railway Company is not defeated. As illustrative of the correctness of this contention we are cited to the case of Railway Company v. Edloff, 89 Texas, 458. In that case a shipment of furniture was made from Chicago, Illinois, to Dallas, Texas. The evidence showed that the furniture was in good condition and carefully packed when it left Chicago, and in a damaged condition when it reached Dallas. It was hauled from Chicago to Purcell, Indian Territory, by the Santa Fe Railway Company and from Purcell to Dallas by the Gulf, Colorado & Santa Fe Railroad Company. The latter company was the final carrier and showed by its conductor that at the time he received the car at

Purcell the door of the car was open and the furniture considerably damaged, but did not show the extent of the damage. Upon this evidence the Supreme Court held that a prima facie case for the full amount of the damages had been made against the Gulf, Colorado & Santa Fe Railroad Company, and that it had failed to relieve itself of any part of the liability; that simply showing that the goods were damaged to some extent, without attempting to show how much, when delivered to it did not defeat or in any wise meet plaintiff's prima facie case. In distinguishing the case of Houston & T. C. Ry. v. Scott, 13 Texas Ct. Rep., 1008, from the Edloff case, our Supreme Court, speaking through Judge Brown, said: "In that case (Edloff case) the freight carried was furniture and the last carrier had an opportunity of inspection and could well determine the extent of the damage before receiving it. By proving that a certain piece of furniture was broken or damaged at the time it was received the company would be able easily to show what the damages amounted to, because the value of the furniture would be easily ascertainable, piece by piece." Thus showing the ground upon which the decision in the Edloff case rests, was the opportunity of the company to inspect the damaged property and thereby ascertain the amount of damage. In that case the conductor of the final carrier testified that when the car of furniture came into his hands at Purcell he found the door of the car open and looking in he discovered some of the furniture broken and damaged, but without attempting to ascertain the extent thereof closed the door and proceeded on his trip. In this case the goods shipped were contained in a closed box, being carried as the personal baggage of a passenger, and although the box when delivered by appellant to the final carrier was in "general bad order" the contents thereof were not exposed to view. In this condition, unlike the furniture in Edloff's case, the chinaware was not open to inspection. Nor do we think the agents of the Texas & Pacific Railway Company were authorized to open the box and examine the goods with a view of ascertaining whether or not they were damaged and if so the extent thereof. Certainly we think it was not their duty to do so. For this reason we hold the rule stated in the case of Railway Co. v. Edloff, supra, is not applicable to the facts of this case.

We do not deem it necessary to discuss the other assignments of error. It is sufficient to say, that in our opinion none of them point out any error requiring a reversal of the case. Our conclusion is that the evidence sustains the verdict of the jury and the case should be affirmed, and it is so ordered.

*Affirmed.*