### TEXAS & P. RY. Co. v. HEATHINGTON.
#### No. 13721.

Court of Civil Appeals of Texas. Fort Worth.

March 11, 1938.

Rehearing Denied April 15, 1938.

T. D. Gresham and R. S. Shapard, both of Dallas, and Shropshire & Bankhead, of Weatherford, for appellant.

Ben J. Hagman, of Weatherford, for appellee.

SPEER, Justice.

This case originated in the justice court of Parker county, when E. C. Heathington sued Texas & Pacific Railway Company for the loss of fifty turkeys, alleged to have been killed by the defendant.

The pleadings of both parties are written; they will be designated as plaintiff and defendant, as they appeared in the trial court.

Plaintiff alleged the turkeys were worth $50 and asked for that amount in damages, and for $10 attorney's fees. The negligence of defendant, which caused the loss, is alleged to consist of defendant failing to keep its right of way clear of brush and weeds, which were claimed to have grown in such profusion and density that at the place where the turkeys were killed, and for some distance in each direction, except at one place where a footpath crossed the right of way, a border or hedge was thereby formed on either side of the roadbed and tracks, so that the turkeys were trapped and hedged in on the defendant's tracks in a way that they could not escape from a passing train. That the vegetation and growth on the right of way constituted an attractive place for turkeys to range in search of food; that the sunflowers, Johnson grass, and other vegetation seeded there; and that the defendant, in the exercise of ordinary care, knew of the conditions described and that such a condition would and did attract plaintiff's turkeys to the place of danger.

An additional ground of negligence is charged to consist in the failure of defendant's train operatives to keep a proper lookout at that place for turkeys and other fowls, not prohibited by law from running at large, which would likely be found at that time of the day in that locality. It is further alleged that those operating the train which killed the turkeys did in fact discover them in time to have averted killing them, by the exercise of ordinary care, but failed to take any steps whatever to stop the train, slacken its speed, sound the whistle, or give other signal to cause the turkeys to quit the

place of danger. Prayer was for the damages sustained and for statutory attorney's fees of $10 and general relief.

The defendant answered by general denial and by special pleas denying the negligence attributed to it by plaintiff; and by a detailed plea of contributory negligence on the part of plaintiff, in permitting his turkeys to wander onto the defendant's property at a time and place where they might be injured. Defendant filed a cross-action against plaintiff for $150, claimed to be damages sustained by it proximately caused by plaintiff's negligence in the premises. Items alleged to have entered into the cross-action were the loss of steam, air, and momentum of the train, the loss of the use of the engine while out of service for cleaning and time of laborers in cleaning it, all alleged to be occasioned by plaintiff's negligence in permitting the turkeys to go upon the premises and being struck by said engine.

The case was appealed from the justice court to the county court, where it was tried de novo to a jury. Upon special issues, a verdict was rendered, and agreeable thereto, judgment was entered in favor of plaintiff, for $50, and against defendant on its cross-action. Defendant has perfected this appeal.

The defendant insists that we should reverse and render this cause, but we do not agree with its contention as a whole, but for reasons we shall presently show, we have concluded the judgment of the trial court should be reversed and the cause remanded for another trial.

The substance and effect of the special issues submitted and their answers were as follows:

1. The defendant company failed to keep a proper lookout at the time and place the turkeys in controversy were killed. This issue failed to place the burden of proof by a preponderance·of the testimony on either party.

2. The failure of the defendant company to keep such lookout was negligence.

3. The negligence of the company was the proximate cause of the death of the turkeys in question.

4. The plaintiff was not guilty of negligence in permitting his turkeys to run at large and go upon the tracks of the defendant at the time they were killed.

6. The plaintiff used ordinary care in permitting his turkeys to run at large and go upon the tracks of the defendant at the time and place they were killed.

7. "Do you find and believe from the preponderance of the evidence defendant's employees in charge of its engine saw said turkeys on the tracks in front of the engine in time to stop said train and engine, by the use of the means at hand, in time to have prevented striking said turkeys?" Answer: "No."

8. "Do you find and believe from the preponderance of the evidence that the defendant railroad company was negligent and careless in keeping their right-of-way clean and was the growth and density of the weeds and grass such as to hinder the turkeys in question from escaping?" Answer: "Yes."

9. "If you believe from the preponderance of the evidence that the defendant railroad company was guilty of negligence and was the proximate cause of the death of the turkeys in question, then what was the damages, if any, sustained by plaintiff?" Answer: "$50.00."

10. The defendant's engine was not soiled or injured because of the collision with the turkeys.

11. The defendant's engine did not require its removal from service of the company in order to have it cleaned, as a result of the contact with the turkeys.

12. The defendant suffered no damages by reason of its engine coming in contact with the turkeys at the time of the collision.

Following these issues, the terms "negligence" and "proximate cause" were defined. There is no definition given of the term "lookout."

■ In passing, we may say, for the benefit of the court on another trial, that plaintiff's claim for attorney's fees, as presented in a special requested issue, should not have·been given. The claim under consideration is not such one as will entitle plaintiff to recover attorney's fees. Article 2226, Rev.Civ.St.; Texas & N. O. Ry. Co. v. Nolen, Tex.Civ.App., 107 S.W.2d 1116.

■ The defendant requested a peremptory instruction, which was properly refused by the court.

■ Defendant's requested special charges Nos. 6, 7, and 8 were given by the court, but they are general charges and should not have been given, since this case was submitted on special issues.

The defendant presents this appeal upon 22 assignments of error and as many propositions, based upon the assignments; we

shall not attempt to discuss them in their order, but suffice it to say there is complaint presented of the many errors presented by this record.

■■ In its challenge to the court's refusal to give a peremptory instruction, the defendant insists that no cause of action against it is shown by the pleadings and testimony offered, in that it was under no legal obligation to either keep a lookout for trespassing turkeys on its right of way, nor to stop its train to avoid collision with the turkeys, after they were discovered. We think the proposition asserted on this point is too broad and does not state the law applicable to such a case as this. In the absence of special exceptions to the plaintiff's petition, it sufficiently states a cause of action at least in one respect. We do not mean to say that by exceptions this phase of the case could be eliminated, but it could be required to be made more definite. There are sufficient allegations that defendant was negligent in permitting its right of way to grow up in weeds and bushes at the particular place where the turkeys were killed, so as to form a trap from which turkeys could not escape, if caught within it. The further allegation appears that because of the rank and matted growth of vegetation shown by the testimony to be from two to seven feet high, the place is made attractive for turkeys in search of food. One witness revealed the obvious fact that grasshoppers frequented such places, and that turkeys were lured there on that account.

■ We do not think it would be incumbent upon the railroad company to eradicate these insects from the right of way, but if it should appear that the company was negligent in permitting the type of growth alleged to be on its right of way, and those acts were the proximate cause of the damages sustained by plaintiff, then the latter would have a proper action for recovery.

■ The fact that the amount in controversy is small is no reason why plaintiff should not be permitted to prove, if he can, his damages. Some of the expressions used by us in this connection are found in a discussion of a case prosecuted for the death of turkeys, in the case of Texas & N. O. Ry. Co. v. Nolen, Tex.Civ.App., 107 S.W.2d 1116.

■ Whether or not there is an imperative duty upon the operatives of defendant's engine to keep a lookout for turkeys or other fowls or animals not prohibited to run at large at the particular place in question, depends upon the knowledge of such agents and employees as to the probability of encountering such fowls or animals at that place. If the condition brought about by the acts of the company, in permitting the alleged growth on its right of way, was an implied invitation to turkeys to frequent the place, then the employees are charged with the duty of using ordinary care to discover such fowls at that place, and to use that degree of care that a reasonably prudent person would use under such circumstances, to prevent injuring them. This principle would also apply if that growth on the right of way had the effect of hedging fowls trapped therein, and preventing their escape from an approaching train. These are matters of fact, subject to proof for a determination by a jury, in response to issues of fact properly presented. 35 Tex.Jur. 744, §§ 471 to 474; Texas & N. O. Ry. Co. v. Moore, Tex.Civ. App., 271 S.W. 126; Texas Electric Ry. Co. v. Reese, Tex.Com.App., 280 S.W. 179.

■ The submission of the first issue in the form given was improper, for the reason there was no previous issue of fact submitted to the jury, the answer to which would have required a determination of whether or not the agents of the defendant should have kept a proper lookout. To put it another way, it was necessary to have a determination of facts by the jury concerning the condition of the right of way, in the matters alleged, before it could be known what would constitute a "proper lookout." It follows, also, that a definition of what constituted a proper "lookout" should have been given.

■ Attention is called to the fact that special issue No. 1 did not place the burden of proof on either party. If the issue had been otherwise correct, it should have required the jury to answer it from a preponderance of the testimony.

■ For the guidance of the court upon another trial, it is not improper for us to say that it is the better practice to give all necessary definitions in the charge preceding the submission of the issues, to aid the jury in their deliberations. Then, too, in the submission of matters of alleged negligence, the inquiry should be as to whether or not such acts were committed, and (a) if so, did they constitute negligence;

(b) did the other party sustain damages; and (c) were the acts the proximate cause of such damages, if any? The definition of "negligence" given in the charge would best be divided into a definition of "ordinary care" and its application to acts constituting negligence.

Issue No. 8, quoted above, should not have been given in that form, for the reasons: First, it clearly presents the wrong idea, wherein the first part reads, in effect: "Was the defendant negligent and careless in keeping its right-of-way clean?" As we understand it, the complaint is that it did not keep its right of way clean, even if that be the test. Such an inquiry should not have been made, because it cannot be claimed the company was obligated to keep its right of way clean, but its only duty is to maintain its premises in such a condition as will answer its purposes and not prove detrimental to the property of another. These acts also involve ordinary care. Second, because the issue is multifarious, in that the inquiry is made if the company was negligent in keeping its right of way clean, and embraces the further inquiry: "And was the growth and density of the weeds and grass such as to hinder the turkeys in question from escaping?" The answer to this combination of inquiries was: "Yes." Literally, this would mean the company was negligent in keeping its right of way clean, and also that the growth and density of the weeds and grass thereon were such as to hinder the turkeys from escaping from the collision. The errors assigned to this issue must be sustained.

Special issue No. 9, quoted above, is subject to the objections made: (a) That it informs the jury of the effect of its answers; (b) it is in the nature of a general charge; and (c) it does not indicate which of the alleged acts of negligence charged the defendant is guilty of.

It will be observed that the nature of this issue is such that if the jury believes the defendant is guilty of negligence and was the proximate cause of the death of the turkeys, they would assess plaintiff's damages. It is not worded so that the negligence of the company shall be determined to be the proximate cause of the death of the turkeys, but simply that the defendant company was the proximate cause of the death of the turkeys. It may prove helpful to here say that upon another trial the matter of defendant's neglience and proximate cause of that negligence should not be embraced in the inquiry, as to the amount of damages sustained. This character of inquiry was condemned and required the reversal of the case of Texas & N. O. Ry. Co. v. Moore, supra. It is also in violation of article 2202, Rev.Civ.St. See, also, Interstate Casualty Co. v. Hogan, Tex.Civ.App., 232 S.W. 354; Grasso v. Cannon Ball Motor Freight Lines, Tex. Com.App., 81 S.W.2d 482.

For the reasons shown, the assignments of error to the points discussed are sustained, which requires us to reverse and remand this cause to the trial court, which is accordingly done.